

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

SLT:LHE/MPR

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ NOV 2 3 2015 ☆

BROOKLYN OFFICE

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

November 12, 2015

By Hand and ECF

The Honorable Jack B. Weinstein
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   United States v. Kamel Lambus, et al.,
         Criminal Docket No. 15-382

Dear Judge Weinstein:

The government respectfully submits this letter in opposition to defendants Kamel Lambus, Stanley Fuller, Shakeem Powell, Tyran Trotter and Andre Mitchell's oral request, made before Your Honor on November 5, 2015, that the Court lift the separation order imposed by the Bureau of Prisons ("BOP").[1]  This request is legally meritless and unwarranted on the facts of the case.  The Court should decline to intervene in the BOP's administration of its facilities.

*[handwritten annotations in right margin:] No finding of fact except purposes of this order are made. Defendant's request to lift separation order imposed by the bureau of Prisons is denied for reasons stated in this letter from the government. No oral argument or further briefing is required. So ordered J.B.Weinstein 11/17/15*

A.   Legal Background

Congress has delegated responsibility for administration of the federal prison system to the executive branch, in the person of the Attorney General.  See 18 U.S.C. § 4001.  The Attorney General, in turn, has delegated that authority to the Bureau of Prisons.  See 28 C.F.R. § 0.96 ("The Director of the Bureau of Prisons is authorized to exercise or perform any of the authority, functions, or duties conferred or imposed upon the Attorney General by any law relating to the commitment, control, or treatment of persons . . . charged with or convicted of offenses against the United States . . . .").  In so doing, "Congress has given

---

[1] Defendant Shavona Trappier was not present at the November 5, 2015 status conference and has not so moved.  On August 27, 2015, the government lifted its separation request as to defendants Earl Davis, Sean Brabram and Michael Scott.  On November 10, 2015, the government lifted its request as to defendant Tyrone Thomas.  Defendant Scott Williams is out on bail.



federal prison officials full discretion to control . . . conditions of confinement," including prisoner classification. Moody v. Daggett, 429 U.S. 78, 88 (1976) (citing 18 U.S.C. § 4081)). Accordingly, among the duties specifically delegated to the BOP is the "[p]romulgat[ion of] rules governing the control and management of Federal penal and correctional institutions and providing for the classification, government, discipline, treatment, care, rehabilitation, and reformation of inmates confined therein." Id. (citing 18 U.S.C. §§ 4001, 4041, 4042)).

Under federal regulation, the BOP maintains the discretion to decide whether to separate defendants under a number of circumstances, including upon the request of the United States Attorney. 28 C.F.R. § 524.72(f) (authorizing the BOP to separate detainees at the request of the U.S. Attorney). The Supreme Court has recognized that the government may detain a defendant pre-trial and "subject him to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." Bell v. Wolfish, 441 U.S. 520, 536-37 (1979). A "detainee's understandable desire to live as comfortably as possible and with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into 'punishment.'" Id. at 537. A particular restriction imposed by the BOP on a pre-trial detainee does not amount to "punishment" if it is "reasonably related to a legitimate governmental objective." Id. at 539. Moreover, "the effective management of the detention facility . . . is a valid objective that may justify imposition of conditions and restrictions of pretrial detention." Id. at 540.

The Supreme Court has recognized that the merits of imposing limitations on the communicative activities of prisoners "are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." Pell v. Procunier, 417 U.S. 817, 827 (1974) (finding constitutional state prison restriction limiting visitors to those who have a personal or professional relationship to the inmate). Courts have routinely shown deference to BOP determinations that separating co-defendants is an appropriate way to address security concerns. See United States v. Ashburn, 2014 WL 1800409, at *14 (E.D.N.Y. May 6, 2014) (Garaufis, J.) (denying motion to lift separation order where defendants are charged with violent gang-related crimes and no change in circumstance is found); United States v. Marino, et al., 09-CR-1243 (LAK) (Dkt. #150) (S.D.N.Y.) (denying motion to lift separation order where defendant made no showing that his constitutional rights had been impinged, and finding that the court therefore need not determine whether the order served proper governmental interests); United States v. Williams, 2004 WL 1192086 at *1 (S.D.N.Y. 2004) (Jones, J.) (denying defendant's pro se motion to have separation order lifted because BOP deemed it necessary amid safety concerns).

B. <u>Application</u>

The defendants' request that the Court remove the separation order should be denied. The BOP acted within its discretion in separating these defendants, and there is no basis to disturb that decision.

On August 13, 2015, the government initially requested that all incarcerated defendants in the above-captioned matter be separated in the interest of facility security and to avoid collusion. At the August 26, 2015 status conference, defense counsel asserted that the separation posed a burden on counsel/client communications. The government thus lifted the separation order as to defendants Earl Davis, Michael Scott and Sean Brabram. The government has also since lifted the separation order as to Tyrone Thomas. The government has since taken several additional concrete steps to alleviate any inconvenience created by the separation. First, it asked that the BOP not apply the separation to attorney visits, and the government has been informed by defense counsel that this request has been followed. Second, it requested that two of the separated defendants be relocated to the GEO facility in order to relieve any administrative burden caused by having a large number of separated defendants in one location. As a result, only three defendants are separated from one another at the MDC (Kamel Lambus, Stanley Fuller, and Tyran Trotter), and only two defendants are subject to separation at GEO (Shakeem Powell and Andre Mitchell).[2]  The government is aware that the defendants have met for joint defense meetings with their counsel on several occasions.

The defendants have made no assertion that they are being separated for a punitive reason or that their constitutional rights have been impinged. Given their demonstrated ability to meet with their co-defendants in the presence of counsel, it is unclear what legitimate need supports their request for the separation to be lifted. While the separation may pose an inconvenience for the defendants, they have presented no basis for this Court to intervene and disturb the BOP's exercise of discretion in its administration of its facilities.

Moreover, the separation order imposed between the defendants here has a valid, non-punitive reason: preventing separated defendants from being able to speak to each other outside the presence of counsel so as to ensure that they are not able to collude or otherwise conspire to direct others to commit further narcotics-related offenses, acts of violence, intimidate witnesses, or obstruct justice by destroying evidence.

These concerns are merited because, as described below, the separated defendants are each members or affiliates of a drug-trafficking organization and street gang that refers to itself as the "Paper Chasing Goons" or "Pov City" ("PCG/Pov City"). The

---

[2] Defendant Shavona Trappier is also subject to separation at the MDC, however, as she is the sole female inmate in the case, she was already separated and housed in a separate building for female prisoners.

3

members of this organization, including the defendants, use social media to post images touting the organization and flaunting its access to weapons and money. They use various hand signs in the images to self-identify, or at times label the messages with references to PCG or Pov City.

Members of this gang also post music videos on social media in which they display weapons, tout their success in the narcotics trade and threaten violence to witnesses that cooperate with the government. Based upon calls intercepted during the wiretap giving rise to this prosecution, defendants Lambus and Fuller appear to be involved in financing the production of these videos. Lambus, Powell, and Mitchell, among other defendants, also appear in certain of these videos. In one of the videos, entitled "ManDown," purportedly created by "PCG Entertainment" and including an appearance by defendant Powell, an unidentified male performer raps that "Since I seen that nigger [inaudible] I ain't seen him since. Word around the street is that the nigga snitched. Momma said "you seen him?" that's what a nigger get. Time to remind a nigger, in case he forget. My niggers real out here, we don't fuck around. So nigger, go start running, start running now. I got a sticky clip slipped on that four pound, all you hear is 'man down.'" The term "four pound" is commonly used in rap music to refer to a handgun. The remainder of the song includes numerous references to "PCG," including "Run with us or run from us, you won't walk, PCG be that gang, nigger." Another video, titled "PCG Gang" opens on a shot of two individuals seated at a table counting currency. On that table are what appears to be a handgun, a black bandana reading "POV CITY," and a box of baking soda, a substance commonly known to be used to dilute narcotics. Later in the video, the performer raps while carrying a shotgun and individuals show their tattoos reading "Pov City" to the camera.

Given that the separated defendants are all members of the same criminal organization, the potential for collusion is significant. Separation has therefore been imposed for a legitimate, non-punitive purpose, and the Court should defer to the BOP's discretion.

Additionally, based on each individual defendant's background, role in the case, criminal history and affiliation with this organization, the government has a legitimate basis to seek that they be separated while awaiting trial.

1. *Kamel Lambus*

Based upon their involvement with this and other investigations, as well as interviews with witnesses, federal agents and detectives assigned to the Jamaica, Queens gang squad have identified Lambus as a leader of PCG/Pov City. He bears a tattoo reading "Pov City," and appears in a number of social media photographs posted on social media by co-defendant Scott Williams depicting himself as a member of PCG/Pov City. A sample of these photographs is attached as Exhibit A. Lambus also appears in the amateur rap videos created by members of PCG/Pov City that are posted on YouTube and other social media sites. For example, in one of the videos, Lambus is pictured while the music plays "We PCG, We're the number one dope boys in NYC." In one of the other videos, Lambus can be seen with co-defendants Shavona Trappier and Scott Williams, counting currency.

4

Lambus holds significant influence over the members of PCG/Pov City. Witnesses advise that Lambus's reputation in the neighborhood is as someone "not to be messed with." Notably, Lambus was arrested in 2003 on attempted murder charges as a result of his alleged involvement in a shooting; he was ultimately convicted of a weapons possession offense.[3] Lambus's involvement with weapons has continued since that conviction. During intercepted telephone calls pursuant to the wiretap giving rise to this case, Lambus and co-defendant Powell discussed Powell obtaining a .38 caliber Ruger pistol on Lambus's behalf. On other calls, Lambus discussed trying to obtain a submachine gun, also referred to as an "uzi."

More significantly, despite Lambus being detained since his arrest, he has repeatedly demonstrated his capacity to reach outside the prison and direct third parties to destroy evidence and intimidate witnesses. For example, in the hours following Lambus's arrest, two women traveled to his apartment, and per the superintendent, broke in. Surveillance footage obtained from the building shows the women enter the apartment and walk out some time later carrying a large suitcase. Additionally, on September 13, 2015, Lambus participated in a telephone call from the MDC with an unidentified male ("UM") in which he advised that associate of the identity of a party that he believed had cooperated with the government's investigation. Specifically, he informed the UM that he "found out who one of the niggas is who told," and told the UM to tell a third party the individual's name, which Lambus provided over the telephone, explaining "he definitely told." He held a similar call with an unidentified female the following day, on September 14, 2015, requesting that she inform the third party as to the identity of the purported cooperating witness.

Given Lambus's role as a leader of the very organization charged in the indictment, history of violence, and evident power and influence over third parties who are not currently incarcerated, the government has legitimate concerns that, given the opportunity, he would continue to conspire, collude and direct his co-defendants to commit further narcotics-related offenses, acts of violence, intimidate witnesses, or obstruct justice by destroying evidence. This is particularly true at present because, due to disciplinary infractions at the MDC, Lambus recently lost his telephone privileges at the facility for a period of 180 days. Lambus was disciplined for obtaining and using other inmates' telephone codes in order to make calls. Based upon his recorded jail calls, it appears Lambus obtained these other telephone codes by arranging for third parties outside the prison to deposit money into the other inmates' commissary accounts. The government believes that if

---

[3] On December 19, 2002, Lambus was arrested by the NYPD for Attempted Murder: Depraved Indifference, among other charges. In connection with that arrest, Lambus was ultimately convicted upon a guilty plea on October 3, 2003 of Attempted Criminal Possession of a Weapon in the Second Degree—Loaded Firearm. He was sentenced to 4 years' incarceration.

permitted to communicate with his co-defendants, he would use them as a mechanism to communicate with, and direct the activities of, his confederates outside the prison.

### 2. *Stanley Fuller*

Stanley Fuller is a longtime narcotics trafficker well-known in the South Jamaica neighborhood as a powerful figure. Fuller is older than most of the members of PCG/Pov City and does not appear in the social media photos or videos described herein. Nevertheless, Fuller's personal background and criminal history merit his separation from his co-defendants.

On September 29, 2014, less than a year before his arrest in this case, Fuller was convicted, upon a plea of guilty, of tampering with a witness in order to induce her not to appear or testify at a proceeding. This conviction was the result of Fuller's bribing a sexual assault victim to withdraw her allegations. Specifically, in or about July 2012, Fuller's cousin, Darryl, recruited his girlfriend to work as a prostitute for his benefit. After his girlfriend agreed, Darryl forced her to advertise her services. As she began to receive calls for her services, however, she refused to perform the acts of prostitution. On one occasion, as Darryl was driving to Stanley Fuller's residence in order to pick up a quantity of heroin, Darryl's girlfriend exited the vehicle and fled to a shelter for safety. Darryl eventually located her, kidnapped her, and held her in a hotel for approximately 4 days, during which time he repeatedly raped her. At some point Darryl left the hotel to report to his parole officer, at which time his girlfriend called 911 to report the kidnapping and rape.

Darryl was subsequently arrested and incarcerated pending trial. During pre-trial detention, he made telephone calls from jail to Stanley Fuller, which were recorded in the ordinary course. During these calls, Darryl and Fuller agreed that Fuller would pay Darryl's girlfriend approximately $20,000-30,000 to recant her testimony, and arranged for Darryl's girlfriend to hire an attorney to assist her in recanting her testimony. Fuller made the payment and the girlfriend withdrew her statements. Fuller later pleaded guilty to witness tampering in the fourth degree, for which he was sentenced to 60 days of imprisonment and 3 years of probation and an order of protection was issued.

Based upon Fuller's influence in his community and demonstrated willingness to commit crimes in order to obstruct justice, the separation order as to Fuller is justified. The government believes that if permitted to communicate with his co-defendants, he would attempt to dissuade them from cooperating with the government's investigation, and use them as a mechanism to communicate with, and direct the activities of, his confederates outside the prison.

### 3. *Shakeem Powell*

Powell is also a member of PCG/Pov City. In addition, based upon information from witnesses, investigators believe Powell to be a member of the Bloods gang. In photographs posted on social media, Powell depicts himself associating with other

members of PCG/Pov City who are showing hand signs to the camera.  A sample of these photographs is attached hereto as Exhibit B.

Additionally, Powell appears in one PCG/Pov City video entitled "ManDown."  During this video, which is described in further detail above, a performer raps about murdering individuals who cooperate with the government.  Calls intercepted in the course of the wiretap in this case include conversations between Powell and Lambus in which Powell discusses obtaining a .32 caliber Ruger pistol on Lambus's behalf.

Given Powell's association with PCG/Pov City and the Bloods, a well-known violent street gang, the separation order as to Powell is justified.  The government believes that if permitted to communicate with his co-defendants outside the presence of counsel, Powell would collude with them in order to intimidate witnesses both within and outside the facility.

4.  *Andre Mitchell*

Andre Mitchell, also known as "Bright" and "Bright Light" frequently posts photographs on social media identifying himself as a member of PCG/Pov City (through the usernames "pcg_bright" and "brightlight") and depicting hand signs associated with the group.  He also posts photos of the PCG "logo."  A sample of these photographs are attached hereto as Exhibit C.  Mitchell also appears in a number of the YouTube videos in which he can be seen associating with co-defendants.  Mitchell's recent criminal history is suggestive of his participation in street violence.  Namely, on May 6, 2015, approximately 2 months prior to his arrest in connection with the instant case, Mitchell was arrested by the New York City Police Department in possession of heroin, a bullet proof vest, and several rounds of ammunition.

Given Mitchell's self-identified membership in PCG/Pov City and indications of his involvement in street violence, separation is warranted.

5.  *Tyran Trotter*

Tyran Trotter is also a member of PCG/Pov City who posts photographs of himself with firearms and associating with other PCG/Pov City members on social media.  A sample of these photographs is attached at Exhibit D.  Trotter is a defendant in four cases involving crimes of violence currently pending in state court, including Robbery in the First Degree, Use of Threatened Use of Dangerous Instrument and Robbery in the Second Degree, Causes Physical Injury.

Given Trotter's membership in PCG/Pov City and indicated capacity for violence, separating him from his co-defendants is justified in the interest of prison security and avoiding collusion.

7

<u>Conclusion</u>

The BOP imposed the separation order in this case pursuant to authority specifically delegated to it by Congress.  There is no suggestion that the separation order was imposed for punitive reasons or is infringing any defendant's constitutional rights.
Moreover, the order was requested by the government for a legitimate purpose.  Accordingly, the government respectfully requests that the Court deny the defendants' oral request to have the separation order imposed by the BOP lifted.

Respectfully submitted,

ROBERT L. CAPERS
United States Attorney

By:      _____/S_____
Lauren Howard Elbert
Michael Robotti
Assistant U.S. Attorneys
718-254-7577/7576

cc:    Defense Counsel (by ECF)

8

EXHIBIT A





**Scott Williams**
April 17, 2012 · 🌐

Share

👍 2 people like this.

Suggested Pages


Kandi Burruss ✔
2,974,868 people like her.
👍 Like

Sponsored 🔖


Hot Dudes Reading
Move over sir, you're blocking the....a
thought, you can stay right there.....
👍 Like Page







Sponsored

Shop now
fbapp.ezsocialshop.com
The MacKensie





EXHIBIT B









 **Shakeem Powell**
January 22, 2014 · 🌐

Share

👍 Oh So Grateful Powell likes this.

People You May Know

 **Jossy Don**
1 mutual friend
➕ Add Friend

Sponsored



**Kaenon. Never Compromise.**
kaenon.com
The best lenses in the world, only by Kae
now!

# EXHIBIT C





17 likes

pcg_bright #PaperChasingGoons #WeMakingItNotFakingIt #YaDig ! ! !   

 **pcg_bright** 🕐 50w



🤍 **33 likes**

**pcg_bright** Me and my young boyz.... Don't make us FUCC U UP!!!😎 @pcg_loopy

 **pcg_brig..t**                     🕐 18w



♡ **37 likes**

**pcg_bright** Me and my niggas earilier on the blocC 💯 We some young Ri$h niggas ❗ 💰



The Other Night Wit A Couple #Gangsters @



HOOD AFFAIRS E

❤ **18 likes**

💬 **pcg_bright #Tbt** my niggas always been goons @freetajdamayor #BangBangThaPovCityGangHere🔫💢🔫 💢🔫😎



EXHIBIT D



